ALICE L. MILLER *v.* ROBERT B. MILLER

SUPERIOR COURT        MIDDLESEX COUNTY        FILE No. 18048

Memorandum filed January 23, 1968

*Senie, Stock & LaChance,* of Westport, for the plaintiff.

*King & Shapero & Bingham,* of Stamford, for the defendant.

PALMER, J. This case is an appeal from a decision of the Probate Court for the district of Middletown, where the defendant herein (father) filed an application to remove the plaintiff herein (mother) as guardian of two minor children of the parties, and to appoint the defendant as the sole guardian of the children. The Probate Court did not enter any formal decree but did file a memorandum of decision finding that the plaintiff was an unfit guardian and the defendant was a fit guardian. The Probate Court ruled that the guardianship of the children be awarded to the defendant, thereby removing the plaintiff as a joint guardian of the children. See General Statutes § 45-43.

The judgment of this court *(Palmer, J.)* sustained the appeal and reversed the decision of the Probate Court. The legal effect of that judgment was to annul the decision of the Probate Court and to leave the parties in status quo ante. The defendant filed an appeal from the judgment.[2] The appeal operated as a stay of the effect of the judgment until a final determination of the cause (Practice Book § 661) and thereby continued the decision of the Probate Court in force and effect until such final determination.

The instant motion, made pursuant to Practice Book § 661, is for a termination of the existing stay of execution of the judgment, that is, a termination of the stay of the legal effect of the judgment. The plaintiff-appellee seeks by this motion to have the judgment of this court made effective so that the decision of the Probate Court will become legally

---

[2] The opinion in the defendant's appeal appears in 158 Conn. 217.

ineffective pending the final determination of the cause by the Supreme Court. At the hearing hereon the parties argued the motion on the merits.

Practice Book § 661 provides that "if the judge who tried the case is of the opinion that . . . the appeal is taken only for delay or that the due administration of justice requires him to do so, he may at any time, upon motion and hearing, order that the stay be terminated." At the hearing on the motion held on January 5, 1968, counsel for the plaintiff-appellee stated she was not claiming that the appeal was taken only for delay. Accordingly, the only issue is whether the due administration of justice requires that the stay be terminated.

The determination of this issue requires a consideration of the factual background. The parties intermarried in Pensacola, Florida, on February 23, 1943. There were no natural children as issue of the marriage. The child Andrea, born on June 19, 1953, was adopted by the parties at the age of one in 1954. The child Nicholas, born on August 14, 1956, was adopted by the parties in September, 1956. On April 6, 1961, the parties entered into a separation agreement providing for custody of the children in the plaintiff mother, with rights of visitation to the defendant father. On May 4, 1961, the defendant obtained a divorce decree in Mexico, which decree approved the separation agreement and ordered the custody of the children to continue in the plaintiff. On June 11, 1962, the Supreme Court of New York in a habeas corpus proceeding granted to the defendant specified rights of visitation with the children. This decree was entered upon agreement of the parties. The New York court entered further decrees upon agreement of the parties, and on February 6, 1966, entered its last decree, which was also by agreement of the parties and continued the

custody of the children in the plaintiff, subject to specific rights of visitation by the defendant.

At all times the children continued to live with the plaintiff in New York City. Immediately after the Mexican divorce in May, 1961, the defendant, who is a psychiatrist, married Shirley Charnay, who was a former patient of his, and she is still his wife. The defendant and his present wife lived in New York City after the divorce until October, 1964, when he moved to Middletown, Connecticut, to take the position of chief of professional services at the Connecticut Valley Hospital. He did not exercise any of his visitation rights under the decrees of the Supreme Court of New York between April of 1964 and June of 1966. On May 31, 1966, the defendant wrote to the plaintiff to arrange to have the children visit him in Middletown. He was entitled to summer visitation under the original separation agreement as approved and modified by the decree of the Supreme Court of New York. At that time and thereafter the plaintiff was a patient in St. Vincent's Hospital, and she did not see the defendant's letter, which was received by her brother, Francis Lavery, with whom the children were then staying. Lavery and the defendant arranged to have the children visit the defendant in Middletown, where they remained for the summer of 1966. In August, 1966, the defendant communicated with the plaintiff in regard to returning the children to her, but at that time she was physically unable to take care of them, and they remained with the defendant. On September 8, 1966, the plaintiff requested the immediate return of the children. The defendant did not comply. Instead he filed an application dated September 10, 1966, in the Probate Court for the district of Middletown to remove the plaintiff as guardian of the children and to appoint the defendant as their sole guardian.

Hearings were held in the Probate Court on November 25, 28 and 30, 1966, by continuance from September 27, 1966. The Probate Court did not enter any formal decree, but in its decision of December 13, 1966, which was admitted into evidence without objection, the Probate Court said: "[I]t is the decision of this Court that the guardianship of the children . . . be awarded to their father and applicant, . . . Robert B. Miller." The Probate Court stated that "[t]he applicant more than sustained the burden of proof by showing Alice L. Miller an unfit guardian and himself a fit guardian." Without question, the Probate Court removed the plaintiff as guardian because of her alleged unfitness.

The trial of this appeal took place in this court on August 8, 11, 16 and 17, 1967, and the court *(Palmer, J.)* rendered judgment on December 7, 1967, sustaining the appeal and reversing the decision of the Probate Court. The court found that the plaintiff was not an unfit person to be joint guardian of the children. It made no finding as to the fitness of the defendant, and the court *(Palmer, J.)* is not of the opinion that the defendant is unfit to be a joint guardian of the children.

The basic issue between the parties to this appeal is the custody of the children, but this appeal is nevertheless not an action for custody, despite the fact that the Probate Court's decision effectually terminated the plaintiff's previously unquestioned right to custody as well as any right of reasonable visitation. As the parties were divorced in a foreign jurisdiction, the issue of custody can be determined only in a habeas corpus proceeding, where the welfare of the children would be the paramount consideration. *Adamsen* v. *Adamsen,* 151 Conn. 172, 178. The issue in the proceedings in the Probate

Court, and upon appeal to this court, was the fitness of the plaintiff to be a joint guardian of the children, although admittedly the treatment of children by a parent has a great bearing on the parent's fitness to be a guardian. The judgment upon this appeal determined only that the Probate Court abused its discretion when it removed the plaintiff as a joint guardian of the children. The judgment did not determine, or attempt to determine, that the welfare of the children required that they be placed in the custody of the plaintiff, as such a determination would not have been within the scope of the issues on this appeal.

The plaintiff mother has not seen her children since May of 1966, except in court and also except for an extremely short period of time on one other occasion. From the time of their birth until May, 1966, the children were reared as, and were, practicing Catholics. Although they were adopted, their natural parents were known to be Catholics. After coming to live with their father and his wife in Middletown in June, 1966, they have been permitted virtually to abandon their religious heritage and training. The defendant has refused to permit the plaintiff to see the children or even to allow her to communicate with them by telephone.

As previously noted, the effect of the judgment rendered herein was to annul the decision of the Probate Court which removed the plaintiff as guardian. The defendant's appeal from the judgment operated to stay its effect, and to continue the decision of the Probate Court in force until a decision of the Supreme Court, unless the stay is terminated. It is not likely that there will be a decision by the Supreme Court within six months. It is possible that the decision of the Supreme Court may not be issued before nine months. It is very possible,

and even likely, that preventing the plaintiff from seeing or communicating with the children for an additional six to nine months will render it impossible for her to reestablish any kind of a normal relationship with them. Even at this time she will have great difficulty in doing so.

The defendant's present full and exclusive custody of the children is based solely on the decision of the Probate Court which has been reversed by this court, and which continues to be effective solely by reason of the stay which is an incident to the defendant's appeal. The court is of the opinion that the due administration of justice requires that the plaintiff be permitted to reestablish communication and a relationship with the children before it is too late to do so. If the Probate Court was in error, as this court has held, the plaintiff has suffered irreparable injury by being cut off from her children for a period of nineteen months. If this court is in error, the defendant may lose full and exclusive custody, not including the right of visitation, for a period of six to nine months, provided that a court of competent jurisdiction so orders, as hereinafter appears.

Even if this court orders a termination of the stay, and thereby suspends the legal effect of the Probate Court decision, it is undisputed that the defendant will not surrender the custody of the children to the plaintiff without legal compulsion to do so. (This may well be true even if the judgment herein is upheld by the Supreme Court.) Without any question it will be necessary for the plaintiff to institute a habeas corpus proceeding to obtain either custody or rights of visitation. The plaintiff, however, cannot initiate such a proceeding so long as the Probate Court decision remains in force, as it will until there is a decision of the Supreme Court, unless the stay is terminated, because a writ of

habeas corpus will not be entertained until the jurisdiction of the Probate Court has been exhausted. *Amato* v. *Erskine,* 100 Conn. 497, 499; *Selvaggi* v. *Lender,* 21 Conn. Sup. 73, 77.

The court believes that on a balance of all the equities the stay ought to be terminated in order to enable the plaintiff to initiate a habeas corpus proceeding to obtain custody of the children, or rights of visitation. Only in such a proceeding can it be determined what is best for the welfare of the children, and that is really the fundamental and critical issue in the controversy between the plaintiff and the defendant. Where neither parent is unfit to be a joint guardian, as the court believes to be the case here, neither the Probate Court nor the Superior Court on appeal from the Probate Court has power to make an award of custody, or to determine visitation rights.

The motion of the plaintiff for termination of the stay is granted.